# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **SAM R. HUNEYCUTT,** | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00003 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
|  **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand these claims to the Commissioner for further consideration.

## *I. Background and Standard of Review*

Plaintiff, Sam R. Huneycutt, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Huneycutt protectively filed his current applications for DIB and SSI[1] on or about February 28, 1998, alleging disability as of October 31, 1995,[2] based on pain in his back and legs and severe migraine headaches. (Record, ("R."), at 1, 20, 95-97, 112.) Huneycutt's claims were denied both initially and on reconsideration. (R. at 52-53, 54, 56-58.) Thereafter, Huneycutt requested a hearing before an administrative law judge, ("ALJ"). (R. at 59.) A hearing was held and the ALJ issued an opinion on April 20, 1999.[3] (R. at 21.) On appeal to the Appeals Council, Huneycutt's claims were remanded to the ALJ. (R. at 21, 62-65.) On remand, the ALJ held another hearing on February 5, 2003, at which Huneycutt was represented. (R. at 519-50.)

---

[1] Huneycutt's application for SSI benefits is not in the record. (R. at 3.)

[2] At his hearing, Huneycutt amended his alleged onset date to June 1, 1997. (R. at 521.)

[3] Neither the transcript of this hearing nor this decision of the ALJ are included in this record.

-2-

By decision dated February 18, 2003, the ALJ denied Huneycutt's claims. (R. at 20-25.) The ALJ found that Huneycutt met the disability insured status requirements of the Act for disability purposes through December 31, 2001. (R. at 24.) The ALJ found that Huneycutt had not engaged in substantial gainful activity since June 1, 1997. (R. at 24.) The ALJ also found that Huneycutt had severe impairments, namely complaints of back pain, mood disorder, anxiety disorder and pain disorder, but he found that Huneycutt did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ further found that Huneycutt's allegations regarding his limitations were not credible. (R. at 24.) The ALJ concluded that Huneycutt had the residual functional capacity to perform medium work[4] with mild limitations in his ability to make occupational, performance and personal-social adjustments. (R. at 24.) The ALJ also found that Huneycutt was not able to perform his past relevant work as a roof bolter in a coal mine. (R. at 24.) Based on Huneycutt's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that Huneycutt could perform other jobs existing in significant numbers in the national economy. (R. at 25.) Thus, the ALJ found that Huneycutt was not under a disability as defined by the Act and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued this decision, Huneycutt pursued his administrative appeals, (R. at 16), but the Appeals Council denied his request for review. (R. at 10-13.) Huneycutt then filed this action seeking review of the ALJ's unfavorable

---

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2005).

-3-

decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Huneycutt's motion for summary judgment filed June 2, 2005, and on the Commissioner's motion for summary judgment filed July 5, 2005.

*II. Facts and Analysis*

Huneycutt was born in 1958, (R. at 95), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2005). He has a high school education. (R. at 129.) Huneycutt has past work experience as a roof bolter in a coal mine. (R. at 204-06.)

In rendering his decision, the ALJ reviewed records from B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. R. Michael Moore, M.D.; Lonesome Pine Hospital; Dr. Lawrence Fleenor, M.D.; Norton Community Hospital; Appalachian Communicare; Dr. Karl W. Konrad, Ph.D, M.D.; Lee County Community Hospital; Appalachia, Virginia, Schools; Dr. Stephen Moore, M.D.; R. J. Milan Jr., Ph.D., a state agency psychologist; Julie Jennings, Ph.D., a state agency psychologist; Howard Leizer, Ph.D., a state agency psychologist; and Dr. Donald R. Williams, M.D., a state agency physician.

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1)

is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 18, 2003, the ALJ denied Huneycutt's claims. (R. at 20-25.) The ALJ found that Huneycutt met the disability insured status requirements of the Act for disability purposes through December 31, 2001. (R. at 24.) The ALJ found that Huneycutt had not engaged in substantial gainful activity since June 1, 1997. (R. at 24.) The ALJ also found that Huneycutt had severe impairments, namely complaints of back pain, mood disorder, anxiety disorder and pain disorder, but he found that Huneycutt did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart

P, Appendix 1. (R. at 24.) The ALJ further found that Huneycutt's allegations regarding his limitations were not credible. (R. at 24.) The ALJ concluded that Huneycutt had the residual functional capacity to perform medium work with mild limitations in his ability to make occupational, performance and personal-social adjustments. (R. at 24.) The ALJ also found that Huneycutt was not able to perform his past relevant work as a roof bolter in a coal mine. (R. at 24.) Based on Huneycutt's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that Huneycutt could perform other jobs existing in significant numbers in the national economy. (R. at 25.) Thus, the ALJ found that Huneycutt was not under a disability as defined by the Act and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975).

-6-

Case 2:05-cv-00003-PMS   Document 16   Filed 09/15/05   Page 6 of 12   Pageid#: 118

Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

In his brief, Huneycutt argues that substantial evidence does not support the ALJ's finding that his impairments did not meet or equal a listed impairment. (Plaintff's Motion for Summary Judgment and Memorandum of Law, ("Plaintiff's Brief"), at 22-26.) Huneycutt also argues that substantial evidence does not support the ALJ's decision regarding his residual functional capacity and that the ALJ erred by failing to give controlling weight to the opinions of Huneycutt's treating physician and treating psychologist. (Plaintiff's Brief at 10-22.)

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding as to Huneycutt's physical residual functional capacity, but does not exist to support the ALJ's finding regarding Huneycutt's mental residual functional capacity. Regarding Huneycutt's physical residual functional capacity, the record contains evidence from Dr. Karl W. Konrad, Ph.D., M.D., who examined Huneycutt on July 21, 1999, and again on September 13, 2000, and found that he suffered from no impairment-related physical limitations. (R. at 372-77.) On November 18, 1997, Dr. Donald R. Williams, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment on which he found that Huneycutt was capable of performing medium work. (R. at 314-21.) On

September 16, 1998, Dr. Marcel G. Lambrechts, M.D., another state agency physician completed a Physical Residual Functional Capacity Assessment on which he found that Huneycutt was capable of performing medium work. (R. at 322-29.) Furthermore, Dr. Burgin Dossett, M.D., testified as a medical expert at Huneycutt's hearing and stated that the medical evidence of record did not support placing any physical limitations on Huneycutt's work-related abilities. (R. at 538-39.)

Turning to the ALJ's analysis of Huneycutt's alleged mental impairment, I first note an inconsistency in the ALJ's opinion. At one point, the ALJ found that Huneycutt did not have a severe mental impairment. Yet, at another point on the same page, the ALJ found that Huneycutt suffered from severe mood and anxiety disorders. (R. at 24.) Despite this inconsistency, the ALJ found that Huneycutt had mild limitations on his ability to make occupational, performance and personal-social adjustments. (R. at 24.) Based on my review of the record, I find that substantial evidence does not exist to support this finding.

I note that, despite Huneycutt's arguments to the contrary, substantial evidence does exist in the record to support the ALJ's finding that Huneycutt's mental impairment did not meet or equal a listed impairment. In particular, the record contains Psychiatric Review Technique forms, ("PRTF"), dated September 10, 2001, and October 10, 2002, completed or affirmed by three different state agency psychologists. (R. at 430-43, 465-79.) Each of these state agency psychologists found that Huneycutt did not suffer from a listed mental impairment. Furthermore, there is no evidence in this record that Lanthorn or any other treating psychologist or psychiatrist stated that Huneycutt's mental impairment met or equaled a listed

impairment.

Nonetheless, I find that substantial evidence does not exist in this record to support the ALJ's finding as to Huneycutt's mental residual functional capacity. As stated above, the ALJ's found that Huneycutt had mild limitations on his ability to make occupational, performance and personal-social adjustments. (R. at 24.) In making this finding, the ALJ gave little weight to the opinions of Lanthorn, Huneycutt's treating psychologist. (R. at 24.) Despite Huneycutt's arguments to the contrary, I find that the ALJ did not err in giving little weight to the opinions of Lanthorn. In particular, I find that the testimony of Thomas A. Schacht, Psy. D.,at the hearing supports the ALJ's rejection of Lanthorn's assessment of Huneycutt's mental abilities. (R. at 539-47.) While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King*, 615 F.2d at 1020, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings. Here the ALJ rejected Lanthorn's opinions based on Schacht's testimony, which pointed out inconsistencies between Lanthorn's assessments and his narrative reports and the lack of objective evidence to support the opinions. (R. at 541-42.) Thus, I find that the ALJ did not err in his weighing of the psychological evidence.

Despite the ALJ's rejection of Lanthorn's opinions, including his assessments, the substantial evidence of record does not support the ALJ's finding as to Huneycutt's mental residual functional capacity. Every other psychological expert who provided an opinion as to the effect of Huneycutt's impairment on his work-

related abilities placed at least moderate restrictions on some areas. A review of the hearing transcript shows that Schacht never offered any opinion as to Huneycutt's residual functional capacity. While Dr. Stephen Moore, M.D., Huneycutt's treating psychiatrist, did not offer an opinion as to Huneycutt's work-related abilities, he did place Huneycutt's Global Assessment of Functioning, ("GAF"), score at 60.[5] (R. at 331.)

On September 10, 2001, R. J. Milan Jr., Ph.D., a state agency psychologist, completed a PRTF which stated that that Huneycutt had moderate difficulties in maintaining concentration, persistence or pace. (R. at 475.) Milan also stated that Huneycutt was moderately limited in his ability to understand, remember and carry out detailed instructions, to perform activities within a schedule, maintain regular attendance and to be punctual within customary tolerances and to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 480-81.) Howard S. Leizer, Ph.D., a state agency psychologist, in a PRTF dated October 10, 2002, also stated that Huneycutt had moderate difficulties in maintaining concentration, persistence or pace. (R. at 440.) Leizer also stated that Huneycutt was moderately limited in his ability to perform activities within a schedule, maintain regular attendance and to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 444-45.) Leizer's opinions were affirmed by Julie Jennings, Ph.D., another state agency psychologist. (R.at 430.)

In reaching his finding as to Huneycutt's mental residual functional capacity, the ALJ necessarily rejected the opinions of the state agency psychologists without offering any explanation of his weighing of this evidence. In determining whether substantial evidence supports the Commissioner's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. For these reasons, I find that substantial evidence does not support the ALJ's finding as to Huneycutt's mental residual functional capacity.

### *III. Conclusion*

For the foregoing reasons, the plaintiff's and the Commissioner's motions for summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and the plaintiff's claims will be remanded to the Commissioner for further consideration.

An appropriate order will be entered.

DATED: This 15th day of September, 2005.

    /s/ *Pamela Meade Sargent*
    UNITED STATES MAGISTRATE JUDGE